THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ROLAND MA, | CASE NO. C18-1778-JCC |
| Plaintiff, | ORDER |
| v. | |
| UNIVERSITY OF SOUTHERN CALIFORNIA, | |
| Defendant. | |

This matter comes before the Court on Defendant's motion for a temporary restraining order ("TRO") (Dkt. No. 55). Having thoroughly considered the parties' briefing and the relevant record, the Court hereby DENIES the motion for the reasons explained herein.

I. **BACKGROUND**

This lawsuit arises from Plaintiff Roland Ma's enrollment at, and ultimate expulsion from, Defendant University of Southern California ("USC"). (*See generally* Dkt. No. 10.) In summer 2018, Mr. Ma was taking a social work field course offered remotely by USC in a virtual classroom. (Dkt. No. 57 at 2.) USC's Disability Services and Programs Office had approved Mr. Ma for several accommodations in this course, including extra time for exams and taking breaks as needed. (*Id.*)

Several weeks into the course, Mr. Ma's professor, Susan Brumer, placed Mr. Ma on a

Student Performance Improvement Plan because of poor academic performance and inappropriate behavior. (*Id*. at 4.) As an example, during class, Mr. Ma reportedly told other students that he was watching pornography. (*Id*.) Professor Brumer states that Mr. Ma's behavior worsened—he made inappropriate comments about Professor Brumer using the class's chat function and asked other students to make complaints against her. (*Id*. at 5.) Mr. Ma also engaged in conduct outside of the classroom—such as filing a complaint against Professor Brumer with the California Board of Behavioral Sciences and sending flowers to her house with a threatening note—that led USC to issue a letter directing Mr. Ma to cease all harassing behavior against University employees. (*Id*. at 5–6; Dkt. No. 59 at 2.) Mr. Ma's conduct eventually resulted in USC placing him on an interim suspension and initiating an administrative review process conducted by the University's Office of Student Judicial Affairs and Community Standards. (Dkt. Nos. 57 at 7, 54-2 at 21.)

Due to Mr. Ma's conduct, Professor Brumer, and another USC employee, Professor Dorian Traube, obtained civil protection orders against Mr. Ma in Washington and California state court. (Dkt. Nos. 57 at 7, 59 at 4.) On November 20, 2018, USC expelled Mr. Ma based on the complaints made against him by Professor Brumer and others. (*See* Dkt. No. 54-2.) USC asserts that throughout the administrative review process, Mr. Ma continually sent emails, letters, faxes, and packages to various USC employees. (Dkt. No. 55 at 5; *see also* Dkt. No. 56 at 1) ("Since August 24, 2018—the date that [Mr. Ma] was placed on interim suspension—various University employees have made me aware that [Mr. Ma] has sent many hundreds, if not thousands of packages, letters, and faxes to them both at their offices and homes.") USC also alleges that Mr. Ma's communication with University employees has continued to this day. (Dkt. No. 56 at 2.)

On December 11, 2018, Mr. Ma filed this lawsuit, alleging that USC violated 42 U.S.C. § 1983; the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101; and the Family Educational Rights and Privacy Act of 1974 (FERPA), 20 U.S.C. § 1232f. (Dkt. No. 10 at 3.)

Mr. Ma alleges that USC discriminated and retaliated against him in violation of the ADA based on its actions during the administrative review process. (*Id.* at 4.) Mr. Ma further alleges that USC violated FERPA because it unlawfully disclosed some of his education records. (*Id.* at 12.) Defendant has filed a motion for partial dismissal of Plaintiff's § 1983 claim and FERPA claim.[1] (Dkt. No. 37 at 1.)

In this motion, USC seeks a TRO that would enjoin Mr. Ma from: (1) communicating with any USC employees other than the University's Office of the General Counsel; (2) entering the USC campus; (3) conducting surveillance or background searches on USC employees; (4) destroying documents or other tangible materials "relating to or referencing the University of any kind until the resolution of this matter"; and (5) "deleting or otherwise scrubbing any electronic devices owned, rented or otherwise in the possession of Plaintiff." (Dkt. No. 55 at 2.) Mr. Ma objects to the issuance of a TRO. (*See* Dkt. No. 62.)

## II. DISCUSSION

In seeking a TRO, the moving party must establish "that [it] is likely to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [its] favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1085 (9th Cir. 2014). Issuance of a TRO is "an extraordinary remedy never awarded as of right." *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015) (citing *Winter*, 55 U.S. at 24).

USC has not met its burden to demonstrate that it is likely to suffer irreparable harm in the absence of a TRO.[2] The purpose of preliminary injunctive relief is to preserve the status quo or to prevent irreparable injury pending the resolution of the underlying claim on the merits. *See*

---

[1] The Court will address Defendant's motion to dismiss in a separate order.

[2] Because the Court denies the TRO on this ground, it does not analyze whether Plaintiff has demonstrated a likelihood of success on the merits, whether the balance of the equities tip in its favor, or whether a TRO would be in the public interest.

*Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1130–31 (9th Cir. 2006); *see also Slone v. Arizona Dep't of Corr.*, Case. No. CV02-1128-MHM, 2002 WL 35645720, at 2 (D. Ariz. Oct. 29, 2002). Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages. *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014) (citing *Rent–A–Ctr., Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991)).

USC asserts that Mr. Ma's "relentless barrage of communications sent to University employees is not merely annoying, it is disruptive, bullying and on occasion frightening." (Dkt. No. 55 at 10.) USC goes on to state that "[w]ithout the relief requested, there is a real danger that Plaintiff will not cease [his] pattern of behavior and that employees will continue to feel rattled, worried and threatened and that University function will be slowed by it." (*Id.* at 10.) Essentially, USC argues that if its employees continue to be subjected to further contact from Mr. Ma, they will be irreparably injured.

USC's proposed TRO does not seek to "preserve the status quo," but to enjoin Mr. Ma from conduct he has been engaging in for months. (*Id.*) As USC points out "[s]ince August 2018, [Mr. Ma] has only increased the volume and multiplied the number of recipients," to which he is sending letters, emails, and other correspondence. (*Id.*) But Mr. Ma's continued efforts to contact USC's employees has no impact on the Court's ability to resolve the merits of this case. At its core, this lawsuit is about whether USC discriminated and retaliated against Mr. Ma in violation of the ADA based on events that happened in 2018. (*See generally* Dkt. No. 10.) The Court will be able to adjudicate Mr. Ma's claims and provide appropriate relief regardless of whether he continues to contact USC's employees during the course of this litigation.[3] *See Kaimowitz v. Orlando, Fla.*, 122 F.3d 41, 43 (11th Cir. 1997) ("A district court should not issue an injunction

---

[3] Since USC has neither filed its answer nor any counterclaims, at this stage the Court does not see how USC's proposed injunctive relief would be part of the final judgment in this case.

when the injunction in question is not of the same character, and deals with a matter lying wholly outside the issues in the suit.").

Moreover, USC and its employees are not without a legal remedy to Mr. Ma's conduct—if his communications are truly harassing to individual employees, they can apply for civil anti-harassment orders in either California or Washington state court. Indeed, Professors Brummer and Traube previously obtained such orders against Mr. Ma. (*See* Dkt. Nos. 57 at 7, 59 at 4.) While the Court certainly understands USC's position that this legal remedy would be onerous, it also finds that the type of blanket no-contact order USC is proposing in its TRO is unwarranted.[4]

Because USC has not demonstrated that it is likely to suffer irreparable harm in the absence of preliminary injunctive relief, its motion for TRO (Dkt. No. 55) is DENIED. What this case needs is not an injunction, but a quick and efficient resolution on the merits.

## III. CONCLUSION

For the above reasons, Defendant's motion for a temporary restraining order (Dkt. No. 55) is DENIED.

DATED this 24th day of January 2019.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

---

[4] The Court also notes that certain aspects of USC's proposed TRO—for example, that Mr. Ma not destroy tangible documents "related to the University" or scrub hard drives—do not appear tailored to prevent the alleged irreparable injury.

ORDER
C18-1778-JCC
PAGE - 5